[758 NYS2d 276]

JON H. HAMMER, Appellant, v AMERICAN KENNEL CLUB et al., Respondents.

First Department, February 27, 2003

## APPEARANCES OF COUNSEL

*Joseph P. Foley* of counsel (*Leslie K. Anker* on the brief; *Jon H. Hammer*, appellant pro se.

*Dale C. Christensen, Jr.*, of counsel (*John J. Galban* and *Jonathan D. Matkowsky* on the brief; *Seward & Kissel LLP*, attorneys), for The American Kennel Club, Inc., respondent.

*Debra I. Resnick* of counsel (*Morea & Schwartz, P.C.*, attorneys), for The American Brittany Club, Inc., respondent.

*Douglas A. Kellner* of counsel (*Kellner Chehebar & Deveney*, attorneys), for Labrador Retriever Club, Inc. and others, amici curiae.

## OPINION OF THE COURT

SAXE, J.

Through the years, the American Kennel Club (AKC) and its member breed clubs have set breed standards for dogs entering various competitions sponsored by that organization. For each of the 146 separate breeds recognized by the AKC, distinct breed standards are established, initially by the national parent breed club, and then submitted to the AKC for approval. For some breeds, the standard involves the cropping, or clipping, of the dogs' ears to a certain size or shape. For certain

other breeds, the standard involves docking, or amputation, of all or part of the dog's tail. The standard promulgated by defendants for judging the breed of dog known as the Brittany, or the Brittany Spaniel, in sponsored competitions, includes the provision that "any tail substantially more than four inches shall be severely penalized."

Plaintiff Jon Hammer is the owner of a purebred Brittany Spaniel which has a natural, undocked tail approximately 10 inches long. He contends that tail docking is a form of animal cruelty, and that the practical effect of defendants' tail standards for Brittany Spaniels is to effectively exclude his dog from meaningfully competing in AKC shows unless he complies with what he perceives as an unfair and discriminatory practice.

Specifically, his amended complaint seeks a declaratory judgment that the complained-of standard (1) unlawfully discriminates against plaintiff by effectively precluding him from entering his dog in breed competitions, (2) is arbitrary and capricious, (3) violates Agriculture and Markets Law § 353, and (4) is null and void as in derogation of law; he further seeks an injunction prohibiting defendants from applying, enforcing or utilizing the standard.

Defendants moved to dismiss the complaint on the grounds that plaintiff did not have the legal capacity to sue and that he had failed to state a cause of action (CPLR 3211 [a] [3], [7]). The motion court granted the motion, and for the reasons that follow, we affirm.

*Justiciability of the Controversy*

■ Initially, we must reject the suggestion made by defendants and the eight organizations that submitted a brief as amici curiae that the court is precluded from addressing the merits of this case according to the doctrine that courts should not interfere with the internal affairs of private voluntary associations. While generally, the internal decision-making and rule adoption of private organizations, involving the conduct of their members and their activities, are outside the realm in which courts exercise their authority, this general rule of noninterference in an organization's self-governance gives way upon a showing that its adopted rules violate state law (*see Freeman v Sports Car Club of Am., Inc.*, 51 F3d 1358, 1363 [1995]). Here, the claim is made that defendants have adopted a standard that promotes, among the owners of Brittany Spaniels raised for competition, a practice that allegedly amounts to the unjustifiable, and therefore illegal, mutilation of the dogs. This claim need not be avoided on ground that the

issue is not justiciable.

*Agriculture and Markets Law § 353*

As plaintiff recognizes, the gravamen of his claim is predicated upon section 353 of the Agriculture and Markets Law. The statute provides that:

> "A person who * * * tortures or cruelly beats or unjustifiably injures, maims, mutilates or kills any animal, whether wild or tame, and whether belonging to himself or to another * * * or causes, procures or permits any animal to be * * * unjustifiably injured, maimed, mutilated or killed, or to be deprived of necessary food or drink, or who wilfully sets on foot, instigates, engages in, or in any way furthers *any act of cruelty* to any animal, or any act tending to produce such cruelty, is guilty of a misdemeanor * * *." (Emphasis added.)

The word "cruelty" is defined in section 350 of the Agriculture and Markets Law as an act causing unjustifiable physical pain.

Two distinct questions are raised in relation to section 353: (1) may it be construed to proscribe the practice of docking dogs' tails for cosmetic reasons, and (2) does plaintiff have an individual right to seek its enforcement? However, if plaintiff has no right to seek enforcement of the statute, his claims under it must be dismissed outright under CPLR 3211 (a) (3), and the court may not reach the question of statutory construction on its merits.

Initially, there are numerous reasons why docking dogs' tails might be termed "cruel." The procedure is generally performed without anesthesia and assertedly causes great pain to the young puppy. Moreover, although the point is disputed by defendants, many dog experts assert that dogs communicate with their tails, especially to other animals (*see* Fox, Understanding Your Dog, at 142 [St. Martin's Press 1972] [describing tail position in displays of aggression in some dogs]; Masson, Dogs Never Lie About Love, at 187-188; Coren, *A Psychologist Looks at Tail Docking*, <http://www.petsmart.com/articles/article_7097.shtml>; Wansborough, *Cosmetic Tail Docking of Dogs' Tails*, 74 Australian Veterinary J 59-63 [July 1996], reprinted at <http://website.lineone.net/~scottvet/tailwag/docking1.txt>). Tail docking necessarily interferes with this natural form of communication, which could arguably result in injury not only to the dog whose tail has been docked, but to other animals with which it attempts to communicate when those communications are hindered in this way.

Nevertheless, the statute does not prohibit causing pain to animals, but *unjustifiably* mutilating or causing *unjustifiable* pain. While plaintiff has offered affidavits from experts stating that the practice of tail docking is unjustifiable, defendants' experts assert that it is, instead, a legitimate and justified procedure. Determination on the merits as to whether the requisite justification is established would be proper in the context of trial or, perhaps, on summary judgment. However, that is a question that the Court cannot properly resolve in the context of this CPLR 3211 motion. Rather, for purposes of this motion, we must assume the truth of the allegations, that:

> "the tail docking practice and standard here complained of is neither medically warranted nor of any discernible benefit to the canine patient, that such procedure causes unnecessary and extreme physical pain and injury and by reason of the customary absence of anesthesia, is carried out in a patently cruel and sadistic manner, and such procedure needlessly subjects the canine patient to further consequential harm."

The question is, *assuming* all this to be true, does Agriculture and Markets Law § 353, or any other provision of law, entitle plaintiff to any form of relief?

*Statutory Construction*

Defendants argue that the statute may not be construed to cover the docking of dogs' tails. They point out that the Legislature has specifically prohibited outright the docking of horses' tails (*see* Agriculture and Markets Law § 368 [1]), and the clipping of dogs' ears if performed either by a nonveterinarian or without anesthesia (*see* Agriculture and Markets Law § 365 [1]). They reason that the failure to specifically prohibit or limit the docking of dogs' tails must be read as an implicit acceptance of the procedure.

We disagree. The very specific prohibitions contained in sections 365 and 368 apply regardless of whether the owner has any justification for the conduct. In contrast, the more general cruelty prohibition of section 353 only applies when it is established that the procedure was unjustified. Therefore, the existence of these two particular prohibitions does not warrant the conclusion that every other procedure is necessarily approved without reservation. Rather, the possibility is left open that other procedures such as dog tail docking *may* be prohibited, *if* it is determined that they lack proper justifica-

tion (*but see People v Rogers*, 183 Misc 2d 538, 544 [2000] [finding the words "unjustifiable" and "unjustifiably" unconstitutionally vague, therefore dismissing prosecution under section 353]).

*Standing*

█ We do agree, however, with defendants' contention that plaintiff lacks the standing to obtain any of the civil remedies he seeks for the alleged violation of Agriculture and Markets Law § 353.

Initially, section 353 specifies that the conduct there proscribed constitutes a misdemeanor. Therefore, notwithstanding its inclusion in the Agriculture and Markets Law rather than the Penal Law, it *is* a criminal statute. Indeed, the legislative history of article 26 reflects that its antecedents were included in the former Penal Code and Penal Law (*see* McKinney's Cons Laws of NY, Book 2B, Agriculture and Markets Law § 353, Historical and Statutory Notes, at 373). As such, its enforcement should be entrusted to the agencies of law enforcement, the police and district attorneys' offices.

Further, civil remedies such as injunctive relief are not generally available to private individuals to prevent violations of penal statutes. "Whether a private right of action should be implied from a statute which on its face provides only for penal sanctions [citations omitted] *depends upon the intent of the statute*" (*Stoganovic v Dinolfo*, 92 AD2d 729, 730 [1983], *affd* 61 NY2d 812 [1984] [emphasis added]). Where a statute does not explicitly provide for a private cause of action, such a right may only be implied where three factors are established: (1) plaintiff must be one of the class for whose benefit the statute was enacted; (2) recognition of a private right of action must promote the legislative purpose; and (3) creation of such a right *must be consistent with the legislative scheme* (*see Carrier v Salvation Army*, 88 NY2d 298, 302 [1996] ). Even assuming the first two factors are satisfied, here a private right of action is inconsistent with the legislative scheme.

Review of article 26 of the Agriculture and Markets Law reflects that the Legislature did more than merely define certain conduct as a misdemeanor; it explicitly determined the means by which these provisions were to be enforced. Section 371 of the Agriculture and Markets Law specifies that police officers and constables have the authority to effectuate arrests or issue summonses for violations, and authorizes agents or officers of incorporated societies for the prevention of cruelty to animals to initiate a criminal proceeding. In addition, section

372 provides for issuance of arrest warrants by a magistrate upon receipt of a complainant's sworn complaint containing reasonable cause to suspect that any of the animal cruelty provisions are being violated. The Legislature's inclusion of a complete scheme for enforcement of its provisions precludes the possibility that it intended enforcement by private individuals as well (*see Larson v Albany Med. Ctr.*, 173 Misc 2d 508 [1997], *mod on other grounds* 252 AD2d 936 [1998]).

Indeed, in view of these explicit enforcement mechanisms, it has already been held that in an action seeking injunctive relief prohibiting conduct that the plaintiff asserted was cruel and inhumane treatment of animals, the plaintiff lacked standing: "[i]n view of the relief available pursuant to article 26 it appears that a citizen has ample remedies to protect against violations of the statute without resort to injunctive relief" (*Walz v Baum*, 42 AD2d 643, 644 [1973], *lv denied* 33 NY2d 517 [1973]; *see also Jones v Beame*, 56 AD2d 778, 779 [1977], *affd* 45 NY2d 402 [1978] ["While plaintiffs do not have standing to maintain this action for declaratory judgment they may be able to seek enforcement of the criminal sanctions for violation of the Agriculture and Markets Law"]).

This conclusion is not contravened by the holding in *Animal Legal Defense Fund, Inc. v Glickman* (154 F3d 426 [1998], *cert denied sub nom. National Assn. for Biomedical Research v Animal Legal Defense Fund, Inc.*, 526 US 1064 [1999]). There, an individual plaintiff was granted standing to challenge regulations adopted by the United States Department of Agriculture as violative of the Department's mandate under Animal Welfare Act § 13 (a) (7 USC § 2143 [a]). The issue in *Glickman* turned upon two issues of federal law: first, whether the plaintiff's allegations met the "case or controversy" requirement of article III of the United States Constitution, and second, whether plaintiff met the "prudential requirements for standing, including 'that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit'" (154 F3d at 431, quoting *Bennett v Spear*, 520 US 154, 162 [1997]). We are bound here, not by federal prudential requirements for an action brought under a federal statute or constitutional provision, but by this state's own requirements for implying a private right of action where the state statute has not explicitly provided for one, which requirements are fully set forth in the previously cited, controlling state cases (*see Carrier v Salvation Army*, 88 NY2d 298, 302 [1996]).

Because plaintiff has no individual right to seek civil enforcement of Agriculture and Markets Law § 353, those portions of his complaint seeking a declaration that defendants' tail standard for Brittany Spaniels violates the statute and is null and void, and seeking an injunction prohibiting defendants from applying, enforcing or utilizing the standard, must be dismissed pursuant to CPLR 3211 (a) (3).

*Discrimination/Arbitrary and Capricious Conduct*

■ Plaintiff's allegations, even accepted as true, fail to establish a right to a declaration that defendants' promulgation of standards for canine tail length constitutes illegal discrimination or arbitrary and capricious conduct.

Not every act of "discrimination" is illegal. The laws that prohibit discriminatory practices apply to specific practices, regarding the areas of employment, education and places of public accommodation (*see e.g.* Civil Rights Law §§ 18-a *et seq.*, 40 *et seq.*, 47 *et seq.*; Executive Law § 290 *et seq.*; 42 USC § 2000e *et seq.*). A plaintiff must possess a legally protected interest (*see Dunn v Fishbein*, 123 AD2d 659, 660 [1986]; *Pokoik v Village of Ocean Beach*, 184 AD2d 499, 500-501 [1992]). The right to compete (more accurately, the right to successfully, or meaningfully, compete) in dog shows is not a legally protected right. In any event, a Brittany Spaniel with an undocked tail is, in fact, permitted to compete (in contrast to, for example, a dog whose height is not within the prescribed range, who would be disqualified); he simply loses points for the dog's tail length.

While plaintiff employs the term discrimination in describing defendants' standards for judging Brittany Spaniels, "discriminating" against dogs with tails longer than four inches is no more illegal than "discriminating" against dogs taller than 20½ inches or smaller than 17½ inches in height, another standard adopted for purposes of competitions. Dog tail length, like dog height, is not a consideration protected by state or federal antidiscrimination law.

Plaintiff argues that this case is on a par with *PGA Tour, Inc. v Martin* (532 US 661 [2001]), in which the physically disabled plaintiff successfully asserted a discrimination claim against a private organization. However, his reliance upon *PGA Tour v Martin* is misplaced. Neither plaintiff nor his dog is a member of a protected class, as was the physically disabled plaintiff in *Martin* under the Federal Americans with Disabilities Act of 1990 (42 USC § 12101 *et seq.*).

He also implies that defendants, like the PGA Tour, must be answerable, because they have a monopolistic control over the

area of dog competitions, and therefore a fiduciary duty to the general public. However, the PGA Tour was answerable under title III of the Americans With Disabilities Act of 1990 because the playing area of a golf course during a tournament is a "public accommodation" and, indeed, is identified as such in the statute (42 USC § 12181 [7] [L]; *see PGA Tour v Martin* at 677). Plaintiff is unable to identify any supportable basis for applying to defendants the rules applicable to a place of public accommodation.

■ Nor is defendants' tail standard for Brittany Spaniels actionable as "arbitrary and capricious" conduct. Even assuming that the different tail length standards applicable to different breeds may be correctly described as "arbitrary" as that adjective is used in ordinary conversation, the legal term of art does not cover this situation. The legal term applies to circumstances where adoption of a ruling or procedure by a governmental agency is subject to legal challenge because it fails the rational basis test, such as where an irrational or arbitrary determination by a government agency is subject to review under CPLR article 78 (*see Schneider v Ambach*, 135 AD2d 284, 288 [1988]). Defendants do not qualify as governmental agencies answerable for the evenhandedness of their procedures.

Finally, we agree with the motion court that plaintiff's request for a declaration as to whether he would be subject to criminal prosecution if he were to dock his dog's tail seeks what amounts to an impermissible advisory opinion. A court in equity will not declare whether particular conduct constitutes a criminal violation unless there are no issues of fact and the sole question is one of law (*see Reed v Littleton*, 275 NY 150, 157 [1937]; *Bunis v Conway*, 17 AD2d 207, 208 [1962], *lv dismissed* 12 NY2d 645 [1963]). Notwithstanding plaintiff's claim of "undisputed factual parameters," we are not working here with an undisputed set of facts. Indeed, the set of facts which plaintiff postulates in seeking this judgment has not actually occurred, and may not ever occur.

Therefore, the remainder of plaintiff's claims were properly dismissed pursuant to CPLR 3211 (a) (7). Plaintiff's allegations do not state a case of illegal discriminatory or arbitrary and capricious conduct.

Accordingly, the judgment of the Supreme Court, New York County (Barbara Kapnick, J.), entered February 28, 2002, dismissing the complaint, and bringing up for review the order of the same court and Justice, entered February 26, 2002, which granted defendants' motions to dismiss the complaint

pursuant to CPLR 3211 (a) (3) and (7), should be affirmed, without costs. The appeal from the aforesaid order of February 26, 2002 should be dismissed, without costs, as subsumed in the appeal from the ensuing judgment.

ELLERIN, J. (dissenting.) Plaintiff alleges that the AKC standard for judging the Brittany Spaniel in sponsored competitions provides that "[a]ny tail substantially more than four inches shall be severely penalized"; that his Brittany Spaniel's tail is approximately 10 inches long; that he has not docked his dog's tail because tail docking for cosmetic reasons violates Agriculture and Markets Law § 353; and that, as a result of his refusal to violate the statute, he cannot meaningfully compete in AKC competitions. I find that these allegations state a cause of action for a declaration that plaintiff has been deprived of the privileges of membership in the AKC on the basis of his refusal to violate a state law. Accordingly, I would reverse the motion court's order and remand the case for further proceedings.

The majority, having held that plaintiff's claim is justiciable and that Agriculture and Markets Law § 353 may be construed to prohibit tail docking as an unjustifiable mutilation, nevertheless concludes that plaintiff lacks standing to obtain any of the civil remedies he seeks for the alleged violation of the statute and that issues of fact preclude this Court from declaring whether plaintiff would be subject to criminal prosecution if he docked his dog's tail because plaintiff has not actually docked his dog's tail and may not ever do so.

Plaintiff's object is not to privately enforce section 353. He does not seek to have defendants prosecuted for violating the statute or even enjoined from docking dogs' tails. Plaintiff seeks a declaration that the AKC's standard for judging the Brittany Spaniel deprives him of a benefit of membership on the basis of his unwillingness to violate a state law and he seeks to enjoin defendants from enforcing that standard against him by penalizing his dog in competitions on the basis of the length of her tail. As the majority recognizes, plaintiff's claim that the AKC's standard promotes, among the owners of Brittany Spaniels raised for competition, a practice that amounts to unjustifiable mutilation of the dogs is a sufficient allegation that the standard violates state law to invoke that exception to the general rule of judicial noninterference in an organization's self-governance (*see e.g. Stevenson v Holstein-Friesian Assn. of Am.*, 30 F2d 625, 627 [1929] [courts "will inquire whether the

action taken was in bad faith, or in violation of the laws of the land"]). Accordingly, having been injured in his ability to compete lawfully in AKC-sponsored competitions as a result of the organization's adoption of the standard, plaintiff may bring this action for declaratory judgment and/or injunctive relief (*see Simons v Berry*, 240 NY 463, 465 [1925] [cause of action for equitable relief stated by union member who allegedly was "denied the privileges of membership"]).

Contrary to the majority's contention, the fact that plaintiff has not docked his dog's tail and may not ever do so does not create a disputed set of facts so as to preclude a declaratory judgment. In the case of *Reed v Littleton* (275 NY 150 [1937]), relied on by the majority, after being acquitted of gambling charges and receiving notice that the District Attorney intended to institute further prosecutions, the plaintiff sought a declaratory judgment, for res judicata purposes and as a complete defense to any future prosecution on the same facts, that his operations were not in violation of the State's gambling laws. The Court held that no action for a declaratory judgment was available to the plaintiff because the possibility existed that at a later date the District Attorney would find further facts that shed a new light on the plaintiff's transactions (*id.* at 153-154). In distinction, there is no dispute as to what constitutes tail docking (*see Bunis v Conway*, 17 AD2d 207, 209 [1962], also cited by the majority, holding available an action for declaratory judgment ["No question of fact is involved, in the sense of a question as to what had factually occurred or what is factually proposed to be done"]). Whether tail docking for purely cosmetic reasons violates section 353 is solely a question of law and entirely appropriate for a declaratory judgment (*see New York Foreign Trade Zone Operators v State Liq. Auth.*, 285 NY 272, 277 [1941]; *Bunis, supra* at 209 ["this presents a question of law for ultimate decision by the court, depending upon the court's determination of the meaning, scope and applicability of the statute"]).

I would also note that, as to whether tail docking violates section 353, the parties have laid bare their proof on this motion to dismiss and there appears to be no question of fact that would require trial or preclude summary judgment at this stage. As the majority points out, the dispute as to whether tail docking violates section 353 centers on whether tail docking is justifiable. Defendants assert that docking a Brittany Spaniel's tail protects the dog against tail injuries during field trials and hunts (*see People v Voelker*, 172 Misc 2d 564, 568-

569 [1997] [although justification is an element of the offense, rather than a defense, the party accused of the violation must specify the justification claimed]). Assuming arguendo that the protection of hunting dogs against tail injuries justifies docking the tails of hunting dogs, it is not a justification for docking the tails of nonhunting dogs, such as plaintiff's, for purposes of AKC competitions.

MAZZARELLI, J.P., and MARLOW, J., concur with SAXE, J.; ELLERIN and LERNER, JJ., dissent in a separate opinion by ELLERIN, J.

Judgment, Supreme Court, New York County, entered February 28, 2002, affirmed, without costs. Appeal from order, same court, entered February 26, 2002, dismissed, without costs, as subsumed in the appeal from the ensuing judgment.